ANTONIO A. SIMONPIETRI, Plaintiff and Appellee, *v.* LUCAS BLANCO, Defendant (Third-Party Plaintiff) Appellee; LIPPITT & SIMONPIETRI, INC., (Third-Party Defendant) Appellant.

No. 10649. Argued November 17, 1952.—Decided April 8, 1953.

*Emilio de Aldrey* for third-party defendant-appellant.   *R. Rivera Zayas, G. Rivera Cestero* and *Milton F. Rúa,* for defendant (third-party plaintiff).   *José M. Valentín Esteves* and *F. Prieto Azúar,* for plaintiff-appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Lucas Blanco owns a two-story building located at No. 302, Tetuán Street, in this city.   Independent ingress to the main floor is gained through Recinto Sur Street and said floor is occupied by Blanco himself.   In January 1948, Blanco leased the entire upper floor to Lippitt & Simonpietri. Ingress to that floor is gained through Tetuán Street only. Although in the contract entered into between Blanco and Lippitt & Simonpietri it was stated that the lessee could not sublet without the previous written consent of the lessor, the

former subleased a portion of the second floor to the plaintiff, Antonio A. Simonpietri, an attorney-at-law, and to other persons.[1]

About 6:30 p. m. of December 30, 1949, as Simonpietri, the sublessee, was leaving his professional office on the second floor and going down the stairway to Tetuán Street, the heel of his left shoe got caught in a crack in one of the tiles of the stair tread, thereby losing his footing and being forced to twist his body abruptly. As a result, he suffered a sprain of his left knee, avulsion fracture in anterior border of tibia and hydrarthrosis of knee, and had to be hospitalized. Based on that accident, Simonpietri sued Blanco for damages. Blanco answered [2] and moved for leave to file a third-party complaint against Lippitt & Simonpietri, the lessee. Upon said leave being granted, the lessee answered both the original, and the third-party complaint. Shortly thereafter the case was tried and the court *a quo* entered judgment dismissing the complaint as to Blanco and ordering Lippitt & Simonpietri to pay to the plaintiff $427 for special damages and $4,500 for physical and mental sufferings and for the latter's disability, plus the costs and $400 as attorney's fees.

The third-party defendant appealed. The first two errors assigned may be discussed jointly. They are to the effect that the trial court erred: (1) in deciding that the third-party defendant had the exclusive control of the stairway in its capacity as lessee of the upper floor of the building and that it was therefore bound to maintain the said stairway in a fit condition to be used, and (2) in deciding that it was not shown by means of evidence that when the lease contract between it and the lessor was entered into, the defect in the stairway already existed.

---

[1] For the purposes of the instant case the non-authorization to sublease has no importance.

[2] There are two answers from the defendant Blanco in the record, filed by different attorneys.

■ These errors were not committed. The court *a quo* had before it sufficient evidence to reach the conclusion that the appellant had the exclusive control of the stairway. The evidence in that connection shows, as set forth by that court in its findings of fact, that although the lease contract entered into between Blanco and the third-party defendant did not expressly state who would have control of the stairway, the third-party defendant paid for the electricity to illuminate said stairway, cleaned it and had the exclusive use of the entrance to the second floor, since Blanco kept no key to the main door facing the stairway leading to the second floor, where the accident occurred, and much less of the padlock the appellant fastened to said door; and that the appellant had the exclusive control of those keys and gave them only to its sublessees. All of that in addition to other small details tending to show unequivocally that the appellant had the exclusive control of the stairway. Therefore, that court was justified in its finding to this effect.

■ The written lease contract entered into between the owner of the property and the third-party defendant, likewise makes no mention of a defect in the stairway. According to § 1452 of the Civil Code, 1930 ed., "If, at the time of the lease of the estate, the condition of the same was not mentioned, the law presumes that the lessee received it in good condition, unless there be proof to the contrary." *Cf. Cole v. Escambrón Development Co.*, 73 P.R.R. 477, 485. The evidence that the trial court had before it was not sufficient, in its judgment, to overcome that presumption. This finding is likewise justified.

■■ The following assignment of error is in the sense that said court erred in deciding that Blanco, the lessor, was not aware of the condition of the stairway, that since that defect was not perceptible at first sight, it required the previous notification to the owner of the property by those having control of the stairway, and that the lack of such notice releases the owner from liability.

As a result of the inspection made and after examining the evidence before its consideration, the court *a quo* set forth in its Findings of Fact "that in the fourth step, coming down from the second flight, there is a crack between the tiles and the edging. *It is an irregular crack, made by the passing of time, perceptible if one looks intently at it,* and which runs parallel to the end of the tiles and the edging. This is the crevice that caused the accident, and, in its widest part, within its extension of five and a half (5½) inches, it measures one (1) inch, and in its narrowest part, half (½) an inch; in its deepest part it is almost one (1) inch deep. The surface of the tiles is even with the edging and *when one places the foot flat between the tile and the edging the crack does not show; in order to notice the defect one must look intently at the crevice, for otherwise what one sees is a black line just as in the other steps where existing cracks have been repaired with cement.* This crack is due to the fact that where the tiles and the edging meet, chips have fallen off and disappeared thus making the edges uneven, and also because the cement or mixture used to join the tiles to the edging has worn out little by little with use. Both the stairway and the entrance hall are well illuminated. At the time of the accident which gave rise to this cause of action, the plaintiff occupied, together with another tenant, by virtue of a verbal sublease contract entered into with Lippitt & Simonpietri, Inc., one of the rooms of said second floor, for which he paid to said lessee a compensation agreed to." (Italics ours.)

Pursuant to § 1444 of the Civil Code, 1930 ed., as amended by Act No. 220 of May 12, 1942 (Sess. Laws, p. 1176):

"The lessor is obliged;

"1. To deliver to the lessee the thing which is the object of the contract.

"2. To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined.

"3. To maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract.

"4. To sign and deliver to the lessee a receipt for each payment made by the latter." [3]

However, in order that the lessor may be under the obligation imposed on him by subdivision (2) of § 1444, *supra*, the lessee, pursuant to the provisions of § 1449 of that same Code, must give "*notice to the owner with the least possible delay . . . . . of the necessity of all the repairs included in number 2 of section 1444. . . . . .*" (Italics ours.) In the instant case, we repeat, the evidence shows not only that the lessee had the exclusive control of the stairway in question, but also that it never gave notice to the defendant Blanco of the existence of any defects in its floor.[4] Consequently, the lessee did not comply with the duty imposed on it by law. On the other hand, although the evidence showed that the defendant Blanco occasionally used the stairway on his way to visit his friend Max Levine, one of the sublessees of the second floor, since the defect in the stairway was latent, implied knowledge thereof cannot be imputed to him. In order to impute negligence to the owner of a building, under the circumstances of the instant case, it must be proved that he had knowledge of the defect existing in the stairway —*cf. Ramírez* v. *Hotel Condado*, 68 P.R.R. 880; *Miranda* v. *Méndez*, 50 P.R.R. 810—and that having that knowledge he failed to do the repairs incumbent upon him. There was no such showing here. In order that under the facts of the case at bar, the owner of the building may be held liable, there must be in the first place an act or failure on his part that may be characterized as negligent. Since Blanco was unaware of the condition of the stairway, he cannot be charged with negligence. As stated in *Vázquez* v. *Antuñano*,

---

[3] The 1942 amendment consisted merely in the addition of subdivision 4.

[4] Prior to the accident, the lessee notified Blanco of certain defects existing in the balustrade or rail of the stairway. They were corrected. Here, however, such notice and repairs play no role whatsoever.

61 P.R.R. 745, 751, citing from Restatement of Torts, § 357, p. 968, "Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, *a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs.*" [5] (Italics ours.)

██ Finally, the appellant insists that the court *a quo* erred in entering judgment against it. This error was not committed either. Insofar as the sublessee is concerned, he occupies in connection with the sublessor the same position that the lessee occupies regarding the lessor. *Ortiz* v. *McCormick Steamship Co.*, 57 P.R.R. 551, 556. In this connection, Manresa, in his *Comentarios al Código Civil Español*, Vol. 10, 1950 ed., states at p. 521:

" . . . . . *the rights and obligations reciprocally incumbent upon sublessors and sublessees, shall be regulated by the pro-*

---

[5] In the case at bar, far from stipulating that the owner would inspect the premises to ascertain the need of repairs, par. (*f*) of the fifth clause of the lease contract provides that:

"The owner shall not be liable for any damage that may be caused to the property, as well as to the officers and stockholders who compose the lessee corporation or to its employees, agents or dependents or to the public in general entering or utilizing the leased premises on account of any deterioration or defect of the building or its lands and surroundings, nor for any accident suffered during the time the lessee shall be in the enjoyment of the premises, which liability rests solely and exclusively on said lessee who undertakes the obligation to take care of and maintain the premises in an absolutely safe condition."

Although given the conclusion we are reaching as to the owner's liability, we need not determine the scope of a stipulation such as that above copied, see §§ 10 and 14 of Act No. 464 of April 25, 1946 (Sess. Laws, pp. 1326, 1342 and 1350) providing that:

"Section 10.—The lessor is bound to make all necessary repairs to the rented property during the period of the lease, in order to maintain it in a condition suitable for the use to which it has been devoted, and to maintain all its services in operation; . . . . ."

"Section 14.—Any clause or stipulation of a lease contract which forbids the tenant to enjoy the leased property; forbids or prevents the tenant from lodging children therein; imposes on him unfair, abusive, or unreasonable terms; *or entails the waiving of any benefit herein established, shall be void.*" (Italics ours.)

Nor need we discuss the scope of such a stipulation on the rights of a third party.

*visions established by the Code for lessors and lessees.* Thus, for example, the sublessor shall be bound to deliver to the sub-lessee the thing which is the subject matter of the contract, to make thereon, during the sublease, all necessary repairs in order to keep it in a condition suitable for the use to which it has been devoted, and to maintain the sublessee in the peaceful enjoyment of the sublease during the entire term of the con-tract; ..." (Italics ours.)

Since the defect in the stairway was a latent defect, the plaintiff was not bound to notify the sublessee of the existence of such defect despite the fact that the plaintiff went up and down said stairway several times a day. *Ortiz* v. *McCormick Steamship Co., supra.* Therefore, the fact that the plaintiff did not notify the third-party defendant of the existence of that defect, does not release the latter from its liability to make on the leased premises all necessary repairs to keep it in a condition suitable for the use to which it was devoted and to maintain the sublessee in the peaceful enjoyment of the leased premises. Its failure on this score constituted negligence for which it is liable.

The judgment appealed from will be affirmed.